UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MULTI-FLEX CIRCUITS PTY LIMITED, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>DANIEL T. EMERSON, et al.,<br><br>Defendants. | Case No.  5:25-cv-00303-BLF<br><br>**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>[Re:  Dkt. No. 22] |

Before the Court is Defendants Daniel Emerson and Light & Motion Industries, Inc.'s (collectively, "Defendants") Motion to Dismiss the Complaint.  Dkt. No. 22 ("Mot.").  Plaintiffs Multi-Flex Circuits Pty. Limited and Elecsys Manufacturing Corporation (collectively, "Plaintiffs") filed a brief in opposition to the motion.  Dkt. No. 23 ("Opp.").  Defendants filed a Reply in support of their motion.  Dkt. No. 26 ("Reply").  The Court previously determined that this motion was suitable for resolution without oral argument and vacated the hearing date.  Dkt. No. 30; *see* Civ. L.R. 7-1(b).

For the following reasons, the Court hereby GRANTS Defendants' Motion to Dismiss the Complaint WITH LEAVE TO AMEND.

**I.  BACKGROUND**

For purposes of this motion, the following facts alleged in the Complaint are taken as true. Multi-Flex Circuits Pty. Limited ("Multi-Flex") is a company based in Australia that designs and manufactures printed circuit boards.  Dkt. No. 4 ("Compl.") ¶ 1.  Elecsys Manufacturing Corporation ("Elecsys") is a company based in the Philippines that provides electronics manufacturing services involving assembly, testing, packaging, and distribution of electronic

1    parts. *Id.* ¶ 2. Defendant Light & Motion Industries, Inc. ("LMI") is a California corporation that
2    sells lights and related equipment marketed for use with bicycles, underwater diving, and
3    photography. *Id.* ¶ 3. Defendant Daniel Emerson ("Emerson") is the Chief Executive Officer of
4    LMI and is also a member of the Board of Directors and a shareholder of the corporation. *Id.* ¶ 4.
5        LMI has ordered printed circuit boards from Multi-Flex for over a decade. *Id.* ¶ 9. During
6    that time, LMI frequently requested that Elecsys source many of the parts for the circuit boards.
7    *Id.* Within the last four years, LMI "began to fall significantly behind in paying Multi-Flex and
8    Elecsys for its orders." *Id.* ¶ 11. LMI's sales had declined prior to the COVID-19 pandemic, and
9    the company continued to experience financial difficulties during the pandemic. *Id.* ¶ 10. As a
10   result, LMI "stopped employing personnel at its warehouse, sought to sub-let its entire warehouse
11   facilities in Marina . . . , and took out [] Small Business Administration 'Payroll Protection Act'
12   ('PPA') loans in 2020 and 2021 . . . to keep its business afloat." *Id.* As of the time of filing, LMI
13   owed Multi-Flex $681,393 (plus interest) "for electronic and lighting parts that Multi-Flex
14   manufactured and shipped to LMI," and LMI owed Elecsys $583,229 "for parts that Elecsys
15   purchased at LMI's request." *Id.* ¶ 11. Plaintiffs further assert that LMI has been inadequately
16   capitalized at all relevant times, and that LMI "used PPA loan proceeds . . . at least in part to pay
17   debts to vendors (contrary to the SBA loan program terms) to hide its insolvency." *Id.* ¶ 12.
18       Multi-Flex and Elecsys filed suit in the United States District Court for the Northern
19   District of California on January 9, 2025. Dkt. No. 4. Multi-Flex brings two claims for relief
20   against LMI and Emerson, the latter on an "alter ego" theory: (1) a claim for breach of a written
21   contract, *id.* ¶¶ 13–19, and (2) a claim for "common counts," *id.* ¶¶ 20–24. Elecsys brings its own
22   common count claim against LMI and Emerson, the latter again on an "alter ego" theory. *Id.*
23   ¶¶ 20–24.

24   **II.   LEGAL STANDARD**

25       Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint if it fails
26   to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, the plaintiff
27   must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*
28   *Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts

2

that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  While courts generally do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555, 570.

When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).  However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted).  On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable. *See MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).

In deciding whether to grant leave to amend, the Court must consider the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003).  A district court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, or (5) futility of amendment. *Eminence Capital*, 316 F.3d at 1051–52.  "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Id.* at 1052.  However, a strong showing with respect to one of the other factors may warrant denial of leave to amend. *Id.*

### III. DISCUSSION

#### A. Breach of Contract

Only Plaintiff Multi-Flex asserts a breach of contract claim against Defendants LMI and Emerson.  Compl. ¶¶ 13–19.  Defendants argue that Multi-Flex's breach of contract allegations

fail to state a claim because "[t]he Complaint fails to identify the contractual obligations allegedly breached with any specificity." Mot. at 9. Instead, "it recites the elements of a contract claim with virtually no adornment," *id.* at 10, noting only that Multi-Flex entered into multiple "written purchase order[s]" with LMI in which LMI promised to remit "payment in full within thirty days of receipt of the shipment" and then failed to make the payments, *id.* (citing Compl. ¶¶ 14–17). Accordingly, Defendants argue that they have not received "fair notice" of Plaintiff's claim and that it is unclear what "material obligations were allegedly breached," because Multi-Flex has not identified which contracts (and how many) are at issue nor identified the specific contract language at issue. *Id.* at 11.

In opposition, Multi-Flex states that Defendants' argument "ignores the allegations in the Complaint." Opp. at 3. After reciting paragraphs 14 through 19 of the Complaint, Multi-Flex argues that those allegations "track the elements of a claim for breach of contract" and that it is "not require[d] . . . to attach the contract or recite the contract's terms verbatim." *Id.* at 4 (quoting *Misha Consulting Grp., Inc. v. Core Educ. and Consulting Sols. Inc.*, No. 13-cv-04262, 2013 WL 6073362, at *1 (N.D. Cal. Nov. 15, 2013)). Multi-Flex states that it is enough to have "specifically allege[d] the provision in the parties' contract that was breached—failure to pay for products shipped within 30 days—the amount that is owed ($681,839), and the time frame for the unpaid orders (within the last four years)." *Id.* at 5.

"[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011) (citing *Reichert v. General Ins. Co.*, 68 Cal. 2d 822, 830 (1968)); *accord 7EDU Impact Acad. Inc. v. You*, 760 F. Supp. 3d 981, 999 (N.D. Cal. 2024). "[A] plaintiff must, in actions involving breach of a written contract, 'allege the specific provisions in the contract creating the obligation the defendant is said to have breached.'" *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 978 (N.D. Cal. 2016) (quoting *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1117 (N.D. Cal. 2011)).

Multi-Flex's breach of contract claim does not sufficiently plead the obligation(s) imposed

4

on Defendants that Defendants are alleged to have breached. It is true that Plaintiff need not "attach the contract or recite the contract's terms verbatim" in order to proceed on a breach of contract claim under the more forgiving federal pleading standard. *Misha Consulting*, 2013 WL 6073362, at *1. However, the Court concludes that Plaintiff's current allegations are too vague and conclusory. Multi-Flex's allegations related to this first claim for relief consist only in stating that (1) "[a]t various times during the past four years, LMI has ordered, and Multi-Flex has manufactured and shipped, printed circuit boards and other electrical parts for use in LMI's lighting products," Compl. ¶ 14; (2) "[e]ach order from LMI was made via a written purchase order and promised Multi-Flex payment in full within thirty days of receipt of the shipment," *id.* ¶ 15; (3) "Multi-Flex performed all material obligations . . . ," *id.* ¶ 16; and (4) "LMI ha[s] breached its obligations . . . by failing to pay the full amount due for goods it ordered from Multi-Flex," *id.* ¶ 17.

In other words, Plaintiff states simply that LMI promised to pay within thirty days of each shipment, but Multi-Flex does not identify any *specific* contracts allegedly breached—pointing only generally to "various" "purchase order[s]," *id.* ¶¶ 14–15—nor the specific provision(s) of the Parties' contract(s) that establish the promise to pay at issue. Thus, Multi-Flex has failed to provide sufficient detail to adequately put Defendants (or the Court) on notice of the factual underpinnings of its breach of contract claim. *See Langan v. United Servs. Auto. Ass'n*, 69 F. Supp. 3d 965, 980 (N.D. Cal. 2014) ("[T]here is no way for the Court know . . . even how many agreements are at issue."); *Iglesia Cristiana Luz Y Verdad v. Church Mut. Ins. Co.*, No. 15-cv-05621, 2016 WL 692839, at *4 (N.D. Cal. Feb. 19, 2016) ("It is not clear from the allegations in the complaint how many policies are at issue. . . . The complaint does not disclose such terms as the amount of coverage or the premiums charged. Plaintiffs' allegations are not sufficiently specific to put Allstate on notice of the contract at issue.").

Accordingly, Multi-Flex's first cause of action for Breach of Written Contract is DISMISSED. However, the Court determines that none of the *Foman* factors weighs against permitting amendment, so the dismissal is WITH LEAVE TO AMEND.

**B. Common Count**

Plaintiffs each assert a common count claim. Compl. ¶ 21 ("LMI has become indebted to Multi-Flex in the amount of $681,393 for goods sold and delivered . . . , and has become indebted to Elecsys in the amount of $583,229 for goods that Elecsys purchased. . . ."). Defendants argue that Multi-Flex's common count claim is "entirely duplicative of its breach of contract claim" and therefore may be dismissed in light of the fact that the breach of contract claim has been dismissed. Mot. at 12 (citing *Perdue v. Rodney Corp.*, No. 13-cv-2712, 2014 WL 3726700, at *8 (S.D. Cal. July 25, 2014)). Regarding Elecsys, Defendants argue that the common count claim fails "for an even more fundamental reason: it does not allege that it delivered anything to LMI." *Id.* at 14. "The Complaint alleges that Elecsys sourced parts for LMI, but nowhere does it say that any of the parts Elecsys predicates LMI's indebtedness on were delivered to LMI," and Defendants argue that the Complaint in this action is so sparse as to render it unreasonable to infer that the goods were delivered. *Id.* at 15.

In response, Plaintiffs argue that Multi-Flex's common count claim survives because the breach of contract claim is adequately pleaded. Opp. at 6. Moreover, Plaintiffs argue that "the Complaint alleges that Multi-Flex performed 'all material obligation[s]' and that LMI has failed to pay for the[] products," which Plaintiffs assert is sufficient. *Id.* As for Elecsys's common count claim, Plaintiffs argue that the Complaint need not specifically allege that any parts were delivered to LMI; rather, it is enough to allege that LMI induced Elecsys to provide services or materials. *Id.* at 7 (citing *Earhart v. William Low Co.*, 25 Cal. 3d 503, 505–16 (1979)).

"A common count . . . is a simplified form of pleading normally used to aver the existence of various forms of monetary indebtedness, including that arising from an alleged duty to make restitution under an assumpsit theory." *Korchemny v. Piterman*, 68 Cal. App. 5th 1032, 1047 (2021) (citing *Zumbrun v. Univ. of S. Cal.*, 25 Cal. App. 3d 1, 14–15 (1972)). It "broadly applies 'wherever one person has received money which belongs to another, and which in equity and good conscience . . . should be returned.'" *Rubinstein v. Fakheri*, 49 Cal. App. 5th 797, 809 (2020) (citation omitted). The elements of a common count claim are: "(1) the statement of indebtedness in a certain sum, (2) the consideration, i.e., goods sold, work done, etc., and (3) nonpayment."

6

*Balboa Cap. Corp. v. Shaya Med. P.C. Inc.*, 623 F. Supp. 3d 1059, 1070–71 (C.D. Cal. 2022) (quoting *Farmers Ins. Exch. v. Zerin*, 53 Cal. App. 4th 445, 460 (1997)).

Regarding Multi-Flex's common count claim, "California courts [have] held that when a common count is used as an alternative claim seeking the same recovery demanded in a specific cause of action based on the same facts, the common count may be dismissed if the cause of action is dismissed." *In re Apple In-App Purchase Litig.*, 855 F. Supp. 2d 1030, 1042 (N.D. Cal. 2012) (citing *McBride v. Boughton*, 123 Cal. App. 4th 379, 394–95 (2004)). In this case, the few allegations indicate that Multi-Flex's common count claim is an alternative for its breach of contract claim, since both claims are based upon LMI's alleged failure to pay for goods sold and delivered. *Compare* Compl. ¶¶ 16, 18, *with id.* ¶¶ 21–22. And, as Defendants point out, the common count claim sets forth a specific amount owed that is the same as the amount incorporated into Multi-Flex's breach of contract claim. *See* Compl. ¶¶ 11, 13, 21. Accordingly, Multi-Flex's common count claim is DISMISSED WITH LEAVE TO AMEND. *See Perdue*, 2014 WL 3726700, at *9 ("Because the Court dismisses Plaintiff's breach of contract claim, it also dismisses Plaintiff's common counts claims.").

As to Elecsys's common count claim, Elecsys is correct that it need not specifically allege that any goods were *delivered* to LMI. A complaint also sets out a common count claim where it "allege[s] 'the payment of a sum of money by plaintiff at the special instance and request of defendant, for which money so paid defendant is indebted to him, and that he (defendant) has failed and refused to pay this money.'" *Rubinstein*, 49 Cal. App. 5th at 810 (quoting *Kraner v. Halsey*, 82 Cal. 209, 210 (1889)). Yet even in the absence of a requirement to allege delivery specifically, Elecsys's assertions fall short of stating a claim for common count.

The Complaint alleges solely that (1) LMI often "requested that Elecsys . . . source many of the parts to be used in the lights," Compl. ¶ 9, and (2) "LMI . . . has become indebted to Elecsys in the amount of $583,229 for goods that Elecsys purchased at LMI's request," *id.* ¶ 21. This assertion of indebtedness lacks adequate facts to make Elecsys's claim for relief plausible. While Plaintiffs' brief states that LMI *expressly* requested Elecsys to purchase various source materials on its behalf, the Complaint alleges no such specific detail(s). From the three very abbreviated

7

mentions of a "request" involving Elecsys by LMI in the Complaint, the Court is unable to discern to whom such requests were directed and whether they were, in fact, "express." (Indeed, given Multi-Flex's role in "combin[ing] its printed circuit boards with the[] parts [sourced by Elecsys], and ship[ping] the finished products to LMI[]," Compl. ¶ 9, the implication seems to be that the request was directed *to Multi-Flex*, which might mean that the cost of the parts sourced by Elecsys was intended to be encapsulated in the contract price due to Multi-Flex.) More factual allegations are necessary to raise Elecsys's right to relief above the speculative level by illustrating the specific request(s) made; the specific goods, services, or outlay of money underpinning this claim; and the specific point(s) at which LMI can be considered to have become "indebted" to Elecsys.

Accordingly, Elecsys's common count claim is DISMISSED. However, the Court determines that none of the *Foman* factors weighs against permitting amendment, so the dismissal is WITH LEAVE TO AMEND.

### C. Alter Ego Liability

Each claim in the Complaint is alleged against Defendant Emerson as the "alter ego" of Defendant LMI. Compl. ¶¶ 19, 24. Defendants argue that Plaintiffs have "utterly fail[ed] to adequately plead either of" the two elements required to establish alter ego liability. Mot. at 3–9. Specifically, Plaintiffs include only a brief paragraph alleging based on information and belief that LMI "at all relevant times, has been inadequately capitalized" and that Defendant Emerson "dominates and controls LMI's operations and decisions." Compl. ¶ 12. Moreover, Defendants argue that the Complaint states that LMI attempted to take various "measures to bolster its finances in response to its [financial] difficulties," an allegation that seems at odds with an accusation of wrongdoing sufficient to establish alter ego liability. Mot. at 8.

Plaintiffs respond that courts have found the alter ego doctrine "applicable where a shareholder was the president and sole shareholder of the corporation and the corporation was inadequately capitalized," asserting that this is such a case because Plaintiffs have alleged "that Emerson and his wife are the sole directors and shareholders of LMI, that Emerson, as CEO, dominated and controlled its operations and decisions, and that he continued its operations . . . when LMI was insolvent and masked this insolvency by illegally using Small Business

8

1    Administration Payroll Protection Act 'loans.'" Opp. at 9–10. Plaintiffs say that they "based
2    these allegations on LMI's corporate filings." *Id.* at 10.

3        "The alter ego doctrine applies where (1) such a unity of interest and ownership exists that
4    the personalities of the corporation and individual are no longer separate, and (2) an inequitable
5    result will follow if the acts are treated as those of the corporation alone." *RRX Indus., Inc. v. Lab-*
6    *Con, Inc.*, 772 F.2d 543, 545 (9th Cir. 1985) (citing *Automotriz Del Golfo De California S.A. De*
7    *C.V. v. Resnick*, 47 Cal. 2d 792, 796 (1957); *U.S. Fire Ins. Co. v. Nat'l Union Fire Ins. Co.*, 107
8    Cal. App. 3d 456, 470 (1980)). "In assessing alter ego, courts consider the commingling of funds
9    and other assets of the entities, the holding out by one entity that it is liable for the debts of the
10   other, identical equitable ownership of the entities, use of the same offices and employees, use of
11   one as a mere shell or conduit for the affairs of the other, inadequate capitalization, disregard of
12   corporate formalities, lack of segregation of corporate records, and identical directors and
13   officers." *Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1040 (N.D. Cal. 2014) (citing *Sonora Diamond*
14   *Corp. v. Superior Court*, 83 Cal. App. 4th 523, 538–39 (2000)). "The corporate form will be
15   disregarded only in narrowly defined circumstances and only when the ends of justice so require."
16   *Eleanor Licensing LLC v. Classic Recreations LLC*, 21 Cal. App. 5th 599, 615 (2018) (internal
17   alterations omitted).

18       "Conclusory allegations of 'alter ego' status are insufficient to state a claim. Rather, a
19   plaintiff must allege specifically both of the elements of alter ego liability, as well as facts
20   supporting each." *Sandoval*, 34 F. Supp. 3d at 1040 (quoting *Neilson v. Union Bank of Cal., N.A.*,
21   290 F. Supp. 2d 1101, 1116 (C.D. Cal. 2003)). In this case, Plaintiffs' allegations related to the
22   alter ego doctrine are insufficient. The only considerations addressed in the Complaint are the
23   alleged inadequate capitalization and the fact that Emerson and his wife are "the sole officers and
24   directors of LMI," an entity that Emerson "dominates and controls" in his capacity as Chief
25   Executive Officer. Compl. ¶ 12. However, despite suggesting that the undercapitalization
26   allegation is based on LMI's "corporate filings," *see* Opp. at 10, Plaintiffs fail to put forward any
27   *facts* showing that LMI actually was undercapitalized or the timeframe during which the
28   undercapitalization allegedly existed. *See Cummings v. Worktap, Inc.*, No. 17-cv-6246, 2019 WL

9

4221652, at *6 (N.D. Cal. Sept. 4, 2019) ("The failure to present facts regarding the amount of capital necessary to continue business operations is fatal to an alter ego claim."). And—as Defendants point out—the Complaint suggests that LMI was not always in dire financial straits, and that it attempted to correct for declines in sales by terminating warehouse personnel and subletting facilities. *See* Compl. ¶ 10. In any event, a "mere allegation that [an entity] is undercapitalized is not enough to imply an unjust result," since to conclude otherwise would render the corporate veil pierceable whenever an entity becomes insolvent. *See Orosa v. Therakos, Inc.*, No. 11-cv-2143, 2011 WL 3667485, at *7 (N.D. Cal. Aug. 22, 2011). Here, there are no other allegations in support of the alter ego theory, i.e., that Emerson commingled funds, disregarded corporate formalities or records, attempted to use the company as a conduit for his personal affairs, or otherwise misused the corporate entity. Without more, the Court concludes that Plaintiffs have not done enough to show the applicability of the doctrine to Emerson.

In sum, the allegations in the Complaint are too brief and conclusory to establish that this is one of those rare situations in which the corporate veil should be pierced. All claims alleged against Defendant Emerson based on an alter ego theory are DISMISSED. However, the Court determines that none of the *Foman* factors weighs against permitting amendment, so the dismissal is WITH LEAVE TO AMEND.

## IV.  ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Multi-Flex's Breach of Written Contract claim is DISMISSED WITH LEAVE TO AMEND;
2. Plaintiffs' respective Common Count claims are DISMISSED WITH LEAVE TO AMEND.
3. All claims against Defendant Daniel Emerson based on an alter ego theory are DISMISSED WITH LEAVE TO AMEND.
4. Plaintiffs may file an amended complaint on or before August 18, 2025. Failure to meet the deadline to file an amended complaint or failure to cure the deficiencies identified in this Order will result in a dismissal of Plaintiffs' claims with prejudice.

Plaintiffs may not add parties or claims without the express approval of the Court or stipulation of all Parties.

**IT IS SO ORDERED.**

Dated: July 16, 2025

_____
BETH LABSON FREEMAN
United States District Judge